ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUL 0 8 2026

KEVIN P WEIMER, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*v.*<br>EDWARD ZIMBARDI | Criminal Indictment<br>No. 2:26CR- 35<br>**UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

## Background

### *Cryptocurrency Terms*

1. "Virtual currency" was a digital representation of value, other than a representation of the U.S. dollar or a foreign currency, that functions as a unit of account, a store of value, and a medium of exchange.

2. "Cryptocurrency" was a type of virtual currency that uses cryptography to manage and secure transactions that are digitally recorded on a distributed ledger, such as a blockchain. Cryptocurrencies usually have no central issuing or regulating authority.

3. A "blockchain" was a term used to describe a distributed ledger that consists of a growing list of records, called blocks, that are securely linked together using cryptography. Blockchains are typically managed by a peer-to-peer computer network for use as a publicly distributed ledger, where nodes collectively adhere to a consensus algorithm protocol to add and validate new transaction blocks.

4. A "cryptocurrency wallet" or "wallet" was a blockchain address that can be accessed through the use of public and private keys. The individual that has the keys for a wallet or blockchain address has control over the value stored in that blockchain address.

5. Ethereum was a blockchain operated by a decentralized group of computers, known as miners and validators, that worked to verify and manage transactions. Ether was the native cryptocurrency of the Ethereum blockchain and was used to pay transaction fees. Other cryptocurrencies, such as Tether and USD Coin, could also be transacted on this blockchain.

6. Tron was a blockchain operated by a decentralized group of computers, known as validators, that worked to verify and manage transactions. Tronix was the native cryptocurrency of the Tron blockchain and was used to pay transaction fees. Other cryptocurrencies, such as Tether, could also be transacted on this blockchain.

7. Exodus was a software cryptocurrency wallet that allowed users to conduct transactions on various blockchains.

8. Crypto.com was a global cryptocurrency platform that offered trading, wallets, payments, and financial services built around digital assets.

*Other Terms*

9. Forex was the foreign, decentralized exchange market where international currencies were traded.

### *Relevant Entities or Organizations*

10. The Crypto Program ("TCP") was a cryptocurrency investment program that purported to sell advertising packages to investors with a promised rate of return.

11. Amsys was a cryptocurrency investment program that replaced The Crypto Program and purported to sell advertising packages to investors with a promised rate of return.

12. Cryptoprogram.me and amsys.io were websites that promoted The Crypto Program and Amsys, respectively, and the programs' purported advertising packages, as well as directed investors on where and how to send cryptocurrency to purchase advertising packages.

13. IMGFX was a Forex brokerage, providing traders with an online platform to buy and sell currencies on the foreign exchange market.

14. Mugan Markets was a Forex brokerage that replaced IMGFX and provided traders with an online platform to buy and sell currencies on the foreign exchange market.

15. FXE Prime was the liquidity provider for IMGFX and was based in Saint Vincent and the Grenadines.

16. ALT5 Sigma Corporation ("ALT5 Sigma") was a virtual asset service provider based in Las Vegas, Nevada that provided blockchain-powered infrastructure for the tokenization, trading, clearing, settlement, and safekeeping of digital assets.

17. Bulk Sender was a bulk sending tool that assisted cryptocurrency wallet owners with distributing cryptocurrency.

*Relevant Financial Institutions*

18. Regions Bank was a financial institution headquartered in Birmingham, Alabama.

19. Wells Fargo Bank was a financial institution headquartered in San Francisco, California.

20. Wise U.S. Inc. was a financial institution headquartered in New York City, New York.

21. USAA Federal Savings Bank ("USAA") was a financial institution headquartered in San Antonio, Texas.

22. United Community Bank was a financial institution headquartered in Greenville, South Carolina.

23. MVB Bank was a financial institution headquartered in Fairmont, West Virginia.

**COUNTS ONE THROUGH TWELVE**
**Wire Fraud**
**18 U.S.C. § 1343**

24. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 23 of this Indictment as if fully set forth here.

25. From in or about June 2022, and continuing until at least on or about August 19, 2023, in the Northern District of Georgia and elsewhere, the

defendant, EDWARD ZIMBARDI, aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, knowingly devised and intended to devise a scheme and artifice to defraud investors, and to obtain money and property from investors, by means of materially false and fraudulent pretenses, representations, and promises, and by omissions of material facts, and for the purpose of executing the scheme and artifice to defraud, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

*The Scheme to Defraud*

26. In or about June 2022, ZIMBARDI launched The Crypto Program, which solicited investors to purchase purported advertising packages with cryptocurrency. In or about October 2022, ZIMBARDI launched Cryptoprogram.me, a website promoting The Crypto Program that directed investors on where and how to send cryptocurrency payments.

27. Between in or about June 2022 and in or about June 2023, ZIMBARDI, with the assistance of CONSPIRATOR-1 and CONSPIRATOR-2, promoted The Crypto Program and Cryptoprogram.me through in-person meetings, promotional materials on Cryptoprogram.me, and online platforms for videos and messaging, such as YouTube, Facebook, and Telegram.

28. In in-person and online meetings with potential investors, ZIMBARDI, CONSPIRATOR-1, and CONSPIRATOR-2 claimed that investors could purchase advertising packages affiliated with media companies like Google, Facebook,

and Yahoo, and that investors would receive guaranteed returns of 25 percent each month. In truth and in fact, no investments were or would be made for advertising packages, and ZIMBARDI used and intended to use the funds obtained from investors for his own purposes.

29. ZIMBARDI held himself out as the "Master Affiliate" of The Crypto Program but falsely claimed that an anonymous group with connections to media companies was running the program itself. In truth and in fact, ZIMBARDI controlled The Crypto Program.

30. In or about June 2023, ZIMBARDI rebranded The Crypto Program and reorganized it under the name Amsys. ZIMBARDI also created the website Amsys.io to replace Cryptoprogram.me.

31. ZIMBARDI, CONSPIRATOR-1, and CONSPIRATOR-2 continued to promote the purported advertising packages investment with guaranteed rates of return of 25 percent through Amsys. ZIMBARDI, CONSPIRATOR-1, and CONSPIRATOR-2 promoted Amsys through in-person meetings, online platforms for videos and messaging, and promotional materials on Amsys.io until on or about August 19, 2023. In truth and in fact, no investments were or would be made for advertising packages and ZIMBARDI used and intended to use the funds obtained from investors for his own purposes.

32. ZIMBARDI held himself out as the "Master Affiliate" of Amsys but falsely continued to claim that an anonymous group with connections to media companies was running the program itself. In truth and in fact, ZIMBARDI controlled Amsys.

33. From in or about June 2022 to at least on or about August 19, 2023, ZIMBARDI directed investors to send investment funds for The Crypto Program and Amsys to cryptocurrency wallets (the TCP Wallets), including those shown in the table below:

| | Address |
|---|---|
| TCP Wallet 1 | Ethereum address ending in 038D4c218fd. |
| TCP Wallet 2 | Ethereum address ending in 0CF66c4b40B. |
| TCP Wallet 3 | Tron address ending in WbdHfxF6MXc. |

34. Unbeknownst to investors, ZIMBARDI controlled the TCP Wallets. Rather than sending investor funds to the anonymous group supposedly running The Crypto Program and Amsys for the purchase of advertising packages as promised, ZIMBARDI used the funds for Forex trading, sent funds using Bulk Sender, and sent funds directly to himself:

(a) For TCP Wallet 1, which received nearly $600,000 in investor funds for The Crypto Program, ZIMBARDI transferred over $440,000 of those funds to be used for Forex trading at IMGFX. The remainder of the funds were spent on ZIMBARDI'S personal expenses, repayment of investors, and other miscellaneous expenses.

(b) For TCP Wallet 2, which received over $84 million in investor funds for The Crypto Program and Amsys, ZIMBARDI transferred over $27.6 million of those funds to be used for Forex trading at IMGFX.

ZIMBARDI also transferred approximately $54 million to Bulk Sender. The funds transferred to Bulk Sender mainly were used to send purported investment return payments to investors in The Crypto Program and Amsys.

(c) For TCP Wallet 3, which received nearly $81 million in investor funds for The Crypto Program and Amsys, ZIMBARDI transferred approximately $6.4 million of those funds to be used for Forex trading at IMGFX and Mugan Markets. ZIMBARDI also transferred approximately $69 million to Bulk Sender. The funds transferred to Bulk Sender mainly were used to send purported investment return payments to investors in The Crypto Program and Amsys.

35. ZIMBARDI, The Crypto Program, and Amsys never invested in any advertising packages. Thus, although some investors did receive purported investment "returns," those "returns" were actually investment funds from other investors in The Crypto Program and Amsys.

36. On or about August 19, 2023, ZIMBARDI shut down Amsys, and investors suffered substantial financial losses.

*Execution of the Scheme*

37. On or about each date set forth in the following table, in the Northern District of Georgia and elsewhere, the defendant, EDWARD ZIMBARDI, aided and abetted by, and aiding and abetting, others known and unknown to the Grand Jury, did, with the intent to defraud, for the purpose of executing the above-described scheme, cause to be transmitted by means of wire communications in

interstate commerce, certain writings, signs, signals, pictures, and sounds, described below:

| Count | Date | Wire Communication |
| --- | --- | --- |
| 1 | 3/21/2023 | Wire transfer of 14,300 USDT from Victim B.M.'s Ethereum wallet ending in AcA443abC39 to TCP Wallet 2. |
| 2 | 5/11/2023 | Wire transfer of $394,000 from victim A.E.'s Wells Fargo bank account ending in 0542 to Zimbardi's Wise U.S. Inc. account ending in 5191. |
| 3 | 5/18/2023 | Wire transfer of 12,650 USDT from victim B.M.'s Ethereum wallet ending in AcA443abC39 to TCP Wallet 2. |
| 4 | 6/3/2023 | Wire transfer of 13,750 USDT from victim B.M.'s Ethereum wallet ending in AcA443abC39 to TCP Wallet 2. |
| 5 | 6/24/2023 | Wire transfer of 2,751 USDT from victim K.J.'s Exodus wallet ending in CjXB64BVhFW to TCP Wallet 3. |
| 6 | 7/3/2023 | Wire transfer of $28,000 from victims K.C. and M.J.'s Regions bank account ending in 2441 to Payward Venture's MVB bank account ending in 4309. |

| Count | Date | Wire Communication |
|---|---|---|
| 7 | 7/9/2023 | Wire transfer of 28,050 USDT from victims K.C. and M.J.'s Exodus wallet ending in fTMXZjwuR1a to TCP Wallet 3. |
| 8 | 7/13/2023 | Wire transfer of 48,950 USDT from victim J.K.'s Tron wallet ending in HgAxAFFzo6J to TCP Wallet 3. |
| 9 | 7/17/2023 | Wire transfer of $45,700 from victims K.C. and M.J.'s Regions bank account ending in 2441 to Payward Venture's MVB bank account ending in 4309. |
| 10 | 7/17/2023 | Wire transfer of 45,120 USDT from victims K.C. and M.J.'s Exodus wallet ending in fTMXZjwuR1a to TCP Wallet 3. |
| 11 | 8/9/2023 | Wire transfer of $40,000 from victims K.C. and M.J.'s Regions bank account ending in 2441 to Payward Venture's MVB bank account ending in 4309. |
| 12 | 8/13/2023 | Wire transfer of 39,610 USDT from victims K.C. and M.J.'s Exodus wallet ending in fTMXZjwuR1a to TCP Wallet 3. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT THIRTEEN**
**Money Laundering Conspiracy**
**18 U.S.C. § 1956(h)**

38. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 23 and 26 through 36 of this Indictment as if fully set forth here.

39. Beginning no later than in or about June 2022 and continuing until in or about August 2023, in the Northern District of Georgia and elsewhere, the defendant, EDWARD ZIMBARDI, and CONSPIRATOR-3, did knowingly combine, conspire, confederate, agree, and have a tacit understanding with each other and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

(a) to knowingly conduct and attempt to conduct a financial transaction in and affecting interstate commerce and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, in and

affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

*Manner and Means*

40. Between in or about June 2022 and in or about June 2023, ZIMBARDI and CONSPIRATOR-3 managed the operation of IMGFX, including managing the relationship with IMGFX's liquidity provider, FXE Prime.

41. When IMGFX was replaced by Mugan Markets in or about June 2023, ZIMBARDI and CONSPIRATOR-3 continued to manage the operation of Mugan Markets, including managing the relationship with Mugan Markets' virtual asset service provider, ALT5 Sigma.

42. Although ZIMBARDI managed IMGFX and Mugan Markets with CONSPIRATOR-3, he and CONSPIRATOR-3 concealed ZIMBARDI's management role from the public, including investors in The Crypto Program and Amsys.

43. Between in or about June 2022 and in or about August 2023, ZIMBARDI regularly transferred funds from the TCP Wallets to FXE Prime in the name of IMGFX, and to ALT5 Sigma in the name of Mugan Markets, while falsely telling investors the funds would be used for advertising packages.

44. Between in or about June 2022 and in or about August 2023, approximately $34.4 million of the funds transferred to FXE Prime and ALT5

Sigma in the names of IMGFX and Mugan Markets, respectively, was sourced from the TCP Wallets.

45. As a result of the above-described money laundering scheme, ZIMBARDI and CONSPIRATOR-3 laundered and attempted to launder over $34.4 million in fraud proceeds.

All in violation of Title 18, United States Code, Section 1956(h).

**COUNTS FOURTEEN THROUGH TWENTY-FIVE**
**Transactional Money Laundering**
**18 U.S.C. § 1957**

46. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 23, 26 through 36, and 40 through 45 of this Indictment as if fully set forth here.

47. On or about the dates listed in the following table, in the Northern District of Georgia and elsewhere, the defendant, EDWARD ZIMBARDI, aiding and abetting, and aided and abetted by, others known and unknown to the Grand Jury, did knowingly engage in and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange, in and affecting interstate and foreign commerce, of funds and monetary instruments by, through, and to a financial institution, namely, the monetary transactions described below, such property having been derived from a specified unlawful activity, namely wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Monetary Transaction |
|---|---|---|
| 14 | 2/1/2023 | Transfer of 1,000,000 USDT from TCP Wallet 2 to FXE Prime wallet ending in 96bFea492ED. |
| 15 | 2/3/2023 | Transfer of 550,000 USDT from TCP Wallet 2 to FXE Prime wallet ending in 96bFea492ED. |
| 16 | 4/7/2023 | Transfer of 485,000 USDT from TCP Wallet 1 to Crypto.com account ending in 7713. |
| 17 | 4/10/2023 | Deposit of $100,000 to USAA account ending in 1627 from Crypto.com account ending in 7713. |
| 18 | 4/11/2023 | Deposit of $100,000 to USAA account ending in 1627 from Crypto.com account ending in 7713. |
| 19 | 4/11/2023 | Deposit of $100,000 to USAA account ending in 1627 from Crypto.com account ending in 7713. |
| 20 | 4/11/2023 | Deposit of $100,000 to USAA account ending in 1627 from Crypto.com account ending in 7713. |
| 21 | 4/13/2023 | Deposit of $82,000 to USAA account ending in 1627 from Crypto.com account ending in 7713. |
| 22 | 6/1/2023 | Transfer of $24,327.69 from Zimbardi's Wise U.S. Inc. account ending in 5191 to B.Z.'s Wells Fargo account ending in 1762. |
| 23 | 6/12/2023 | Transfer of $116,301.90 from Zimbardi's Wise U.S. Inc. account ending in 5191 to W.C.R.O's Wells Fargo account ending in 6490. |
| 24 | 6/30/2023 | Transfer of $15,429.77 from Wise U.S. Inc. account ending in 5191 to B.Z.'s Wells Fargo account ending in 1762. |
| 25 | 7/19/2023 | Transfer of $250,841.15 from Wise U.S. Inc. account ending in 5191 to N.G.T.C's United Community Bank account ending in 3154. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

48. Upon conviction of one or more of the offenses alleged in Counts One through Twelve of this Indictment, the defendant, EDWARD ZIMBARDI, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from said offenses, including, but not limited to, the following:

a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Twelve of this Indictment.

b. VIRTUAL CURRENCY:

   i. 11.87481412 Bitcoin seized by Dutch authorities in or around June 2024;

   ii. 2.157013708 Ethereum seized by Dutch authorities in or around June 2024;

   iii. 713,344,695.26030964 Shiba Inu seized by Dutch authorities in or around June 2024;

   iv. 47,110.72 Tether seized by Dutch authorities in or around June 2024;

   v. 12,095.8 USDT0 seized by Dutch authorities in or around June 2024;

vi. 3,300,988.999839 Ripple seized by Dutch authorities in or around June 2024;

vii. 1,095.005988 Dogecoin seized by Dutch authorities in or around June 2024;

viii. 10,200,000 Osaka Protocol seized by Dutch authorities in or around February 2024; and,

ix. 11.972683141866435983 Polygon seized by Dutch authorities in or around February 2024.

49. Upon conviction of one or more of the offenses alleged in Counts Thirteen through Twenty-Five of this Indictment, the defendant, EDWARD ZIMBARDI, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offenses, or any property traceable thereto, including, but not limited to, the following:

a. MONEY JUDGMENT: A sum of money in United States currency, representing the amount of property obtained as a result of the offenses alleged in Counts Thirteen through Twenty-Five of this Indictment.

b. VIRTUAL CURRENCY:

i. 11.87481412 Bitcoin seized by Dutch authorities in or around June 2024;

ii. 2.157013708 Ethereum seized by Dutch authorities in or around June 2024;

iii. 713,344,695.26030964 Shiba Inu seized by Dutch authorities in or around June 2024;

iv. 47,110.72 Tether seized by Dutch authorities in or around June 2024;

v. 12,095.8 USDT0 seized by Dutch authorities in or around June 2024;

vi. 3,300,988.999839 Ripple seized by Dutch authorities in or around June 2024;

vii. 1,095.005988 Dogecoin seized by Dutch authorities in or around June 2024;

viii. 10,200,000 Osaka Protocol seized by Dutch authorities in or around February 2024; and,

ix. 11.972683141866435983 Polygon seized by Dutch authorities in or around February 2024.

50. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the Court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty,

51. the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A True BILL

FOREPERSON

THEODORE S. HERTZBERG
*United States Attorney*

BETHANY L. RUPERT
*Assistant United States Attorney*
Georgia Bar No. 971630

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181